(41 Misc. Rep. 523.)

### PEOPLE ex rel. MAHER v. CARLETON.

(Supreme Court, Special Term, New York County. October, 1903.)

1. ELECTIONS—REGISTRATION—DEPUTIES—POWERS.

The metropolitan election district law (Laws 1898, p. 1614, c. 676) gives deputies appointed thereunder the power to investigate the registration of voters, and to inspect any house within the metropolitan district, and interrogate the inmates thereof as to persons residing or claiming to reside therein. *Held* to give such power only after the registration has begun, so as not to render it a misdemeanor for a person to refuse information to a deputy before the first day of registration.

In the matter of the people, on the complaint of John D. Maher, for writ of habeas corpus to Valentine Carleton. Writ sustained.

John Cunneen, Atty. Gen., for the People.

Sullivan, Goldsmith & Engel (Henry J. Goldsmith, of counsel), for respondent.

LEVENTRITT, J. The relator was arrested for a violation of section 6 of the metropolitan elections district law (Laws 1898, p. 1614, c. 676), making it a misdemeanor to refuse information to a deputy appointed under the act. The alleged offense was committed on the 2d day of October, prior to the first day of registration, and more than the 29 days before election, which is the time set, under section 9, for lodging house, inn, or hotel ·keepers to furnish the superintendent of elections with the names of the lodgers who claim a voting residence.

Whatever power may be vested in the deputies, I am satisfied that its exercise in this particular case was premature. The deputies, under subdivision 1 of section 6, may "investigate all questions relating to registration of .voters, and for that purpose shall have power to visit and inspect any house, dwelling, building, inn, lodging-house or hotel * * * and interrogate any inmate * * * proprietor or landlord thereof or therein, as to any person or persons residing or claiming to reside therein or thereat." This section is the measure of the deputies' power, and, under it, I am of the opinion that their inquiries can be made only after registration. The sole authority for asking any questions is derived ˙from the power in the Legislature, granted by the Constitution, to make laws for "ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage." Const. art. 2, § 4. ."Registration is the

method of proof prescribed for ascertaining the electors who are qualified to cast votes * * *. It is a part of the machinery of elections, and is a reasonable regulation, which conduces to their orderly conduct and fairness." People ex rel. Stapleton v. Bell, 119 N. Y. 175, 181, 23 N. E. 533. Therefore a person who registers or seeks to register subjects himself to such reasonable regulations and reasonable inquiry as may be necessary to establish the proof which the Constitution says the Legislature might require. The Legislature has not attempted, nor can it constitutionally attempt, to direct an inquisition merely because a person who has no intention of registering chances to be an inmate of a hotel or lodging house. The power is an incident of the power to control elections, and can have no relation to nonparticipants. By registration an intending voter subjects himself to the contemplated control, but not before. While the deputies may make such independent investigation as they see fit prior to registration, I find no authority for interrogating an individual who they believe will register. The safeguards which the law has wisely sought to create so as to preserve the purity of the ballot are designed to test the intending voter's qualifications, but they do not reach the particular individual until by registration or attempted registration he has sought to qualify.

It may be pointed out, in passing, that the precise question objected to is embodied in the affidavit required by legislative enactment where the right to register is challenged. Election Law 1896, p. 915, c. 909, § 34, subd. 6. If it is material there as testing qualification by tending to establish residence, it is difficult to see why it is not equally material in a preliminary application having the same end in view. The fear expressed that permitting such a question would lead to others is not justified, first, because the scope of an inquiry of this kind is clearly indicated and limited by legislative enactment; and, secondly, because the determination of the materiality of any question as tending to prove qualification or to test residence is not in the inspectors or the deputies, but in the courts. Goetcheus v. Matthewson, 61 N. Y. 420, 425, 428. In my opinion, the question asked marks the legitimate limit to which inquiries may be pressed.

Writ sustained, and prisoner discharged.